# WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
BERNARD W. NUSSBAUM
LAWRENCE B. PEDOWITZ
PAUL VIZCARRONDO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ERIC M. ROTH
ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MARC WOLINSKY
DAVID GRUENSTEIN
STEPHEN G. GELLMAN
STEVEN A. ROSENBLUM
STEPHANIE J. SELIGMAN

JOHN F. SAVARESE
SCOTT K. CHARLES
DAVID S. NEILL
JODI J. SCHWARTZ
ADAM O. EMMERICH
GEORGE T. CONWAY III
RALPH M. LEVENE
RICHARD G. MASON
MICHAEL J. SEGAL
DAVID M. SILK
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
RACHELLE SILVERBERG
STEVEN A. COHEN

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150
TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

OF COUNSEL

WILLIAM T. ALLEN
PETER C. CANELLOS
DAVID M. EINHORN
KENNETH B. FORREST
THEODORE GEWERTZ
MAURA R. GROSSMAN
RICHARD D. KATCHER
THEODORE A. LEVINE
DOUGLAS K. MAYER
ROBERT B. MAZUR
PHILIP MINDLIN

ROBERT M. MORGENTHAU
ERIC S. ROBINSON
PATRICIA A. ROBINSON*
LEONARD M. ROSEN
MICHAEL W. SCHWARTZ
ELLIOTT V. STEIN
WARREN R. STERN
PATRICIA A. VLAHAKIS
J. BRYAN WHITWORTH
AMY R. WOLF

DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE S. MAKOW
JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
DAVID A. SCHWARTZ
JOHN F. LYNCH
WILLIAM SAVITT
ERIC M. ROSOF
MARTIN J.E. ARMS
GREGORY E. OSTLING
DAVID B. ANDERS

ADAM J. SHAPIRO
NELSON O. FITTS
JEREMY L. GOLDSTEIN
JOSHUA M. HOLMES
DAVID E. SHAPIRO
DAMIAN G. DIDDEN
ANTE VUCIC
IAN BOCZKO
MATTHEW M. GUEST
DAVID E. KAHAN
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN
ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN
RONALD C. CHEN
GORDON S. MOODIE
DONGJU SONG
BRADLEY R. WILSON

* ADMITTED IN THE DISTRICT OF COLUMBIA

DIRECT DIAL: (212) 403-1216
DIRECT FAX: (212) 403-2216
E-MAIL: HMWachtell@wlrk.com

December 2, 2013

VIA E-MAIL & ECF
Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square, Courtroom 905
New York, New York 10007

Re:   *Omega Overseas Partners, Ltd.* v. *Griffith*, 13-cv-4202 (RJS)

Dear Judge Sullivan:

Pursuant to Your Honor's Order of November 18, 2013, we respectfully submit this letter on behalf of all defendants describing their presently anticipated motions to dismiss.

As the Court is aware, this is a putative derivative action brought by a Cayman fund on behalf of Tetragon Financial Group Limited, a Guernsey investment fund. The crux of this lawsuit is a related-party transaction announced in October 2012 by which the Tetragon Fund — upon the approval of a committee comprised of its four independent directors — acquired certain assets of Polygon Management L.P. from defendants Griffith and Dear (and other Polygon owners) in exchange for shares of the Fund. Plaintiffs claim that the Polygon transaction overpaid the sellers by using stock that was allegedly undervalued at market price. Plaintiffs also assert a claim that during the depths of the financial crisis the NAV of the Fund was manipulated too *low* so as to garner performance fees for the Griffith/Dear-controlled management company upon a supposedly inevitable recovery.

**Defective Verifications.** Each of the required verifications to the complaint is unsworn and fails to contain the phrase "under penalty of perjury" required by 28 U.S.C. § 1746. This defect was called to plaintiffs' attention at the October 31, 2013 deposition of Leon Cooperman but has not been rectified. The complaint is therefore subject to dismissal. *See Kautz* v. *Sugarman*, 2011 WL 1330676, at *3-4 (S.D.N.Y. Mar. 31, 2011) (Sullivan, J.).

**Plaintiffs lack standing: they have never been "shareholders or members" of the Fund.** A derivative plaintiff must be a "shareholder or member" of the corporation, a status that is determined by the law of the place of incorporation. *See Kamen* v. *Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). Under Guernsey law — the Companies (Guernsey) Law §§ 6(2)(a), 121(2) — only those persons "whose name is entered in its register" are members and shareholders. The Fund's Articles are to the same effect. Here, neither plaintiff is, nor has ever been, a registered shareholder of the Fund, and dismissal is required. *Cf. Tomran, Inc.* v. *Passano*, 891 A.2d 336, 339 (Md. 2006) (applying Irish law). Moreover, if the complaint is read to allege an ongoing scheme of wrongdoing going back to 2008 involving the supposed

manipulation of the Fund's NAV (Complt. ¶¶ 56-66), then plaintiffs were not even *beneficial* owners of Fund shares "throughout the course of the activities that constitute the primary basis of the complaint." *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 298 (2d Cir. 2003).

***Plaintiffs do not have standing under Foss v. Harbottle.*** The Fund is a Guernsey company; accordingly, plaintiffs must at the threshold satisfy Guernsey's substantive requirements for pursuing a derivative action. *E.g.*, *City of Harper Woods Emps. Ret. Sys.* v. *Olver*, 589 F.3d 1292, 1299 (D.C. Cir. 2009). Guernsey applies the traditional English rule of *Foss* v. *Harbottle* as to the bringing of such an action. *See Jackson* v. *Dear & Ors*, ¶¶ 14-15, 134 (Royal Court of Guernsey, 2013). Under *Foss*: (1) a would-be derivative plaintiff must establish a prima facie case that the company is entitled to the relief claimed; and (2) the action must fall within one of three exceptions to the general rule barring shareholders from bringing claims on behalf of their companies. Here, as will be shown, dismissal is required on each ground.

***Plaintiffs are not adequate representatives of the Fund.*** Lack of adequacy under Rule 23.1 — *i.e.*, "standing" — likewise goes to subject matter jurisdiction. *See, e.g.*, *Kautz*, 2011 WL 1330676, at *3-4. Plaintiff Omega, a substantial investor in the Fund, is totally controlled by Mr. Cooperman. Mr. Cooperman is not an adequate representative for multiple reasons. To describe just a few:

*First*, Mr. Cooperman acknowledged that this lawsuit was brought because defendants would not accede to his "recommendations" for corporate governance policies with respect to dividends and stock repurchases — policies wholly unrelated to the transactions challenged — that would put many millions of dollars into his personal pocket. Moreover, he testified that he would abandon the action if defendants knuckled down to his "recommendations." *E.g.*, *Smith* v. *Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) ("A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda.").

*Next*, Mr. Cooperman evidenced lack of awareness of critical claims of the complaint. Albeit repeatedly asserting that he was *not* attacking the managers' fees, he professed ignorance of the complaint's prayer for restitution of some $600 million in fees. Similarly, albeit professing himself in *favor* of the Dutch auction share buyback engaged in by the Fund contemporaneous with the challenged Polygon transaction, he was unaware of the prayer for rescission of that buyback. *E.g.*, *Efros* v. *Nationwide Corp.*, 98 F.R.D. 703, 707 (S.D. Ohio 1983) (plaintiff inadequate where her testimony revealed that "many of the claims made by her attorneys" and remedies sought were ones "that [plaintiff] herself does not want to pursue").

*Next*, Mr. Cooperman — who prefers to be characterized as a "multibillionaire" rather than a mere "billionaire," and who is accustomed to being the "boss" and "calling the shots" — has been driven by his very considerable ego to engage in what is plainly a personal vendetta against these defendants for being unwilling to follow his "recommendations." Albeit conceding that this lawsuit would be *damaging* to the Fund and advised by his own counsel it was unlikely to succeed, he nonetheless determined to pursue it because — even if unsuccessful — it would add to his personal "lustre." Per Mr. Cooperman, the defendants are "pigs" and "scumbags" whom he hoped would get "7 to 25 years" by reason of his testimony; the lawyers at the Cravath firm are "peckerheads"; the Wachtell, Lipton firm is "representing criminals for a fee" and (mythically) has been "censured by the court" for "withholding evidence." *E.g.*, *Norman* v. *Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) ("any such personal vendetta intrudes unavoidably upon the fiduciary duty of the class representative in litigation of this sort"). Moreover — in addition to being intemperate and repetitively engaging upon deposition in long-winded harangues — Mr. Cooperman demonstrated himself to be a generally dishonest person. Time and again, he was shown to have made false statements in his dealings with defendants; in his attacks upon them in the press; and, repeatedly, in his very deposition

testimony. These attributes as well disqualify Mr. Cooperman as an adequate representative. *E.g., Savino* v. *Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff.").

As for plaintiff Hall, a Connecticut resident, FINRA records — reflecting that he was terminated from a brokerage firm over a year ago for reasons, among other things, of providing false pricing information to firm counterparties in connection with trades — raise serious issues concerning his adequacy. Defendants are still awaiting discovery that may disclose further grounds of inadequacy of this plaintiff.

***The complaint flunks the plausibility requirement of Twombly/Iqbal.*** The two *sine qua non* complaint allegations are not only implausible, but have now been expressly disavowed by Mr. Cooperman upon deposition: (1) Mr. Cooperman admitted that he has no basis to believe that the Fund's NAV was ever fixed lower than appropriate; and (2) although the complaint alleges that the shares used to pay for Polygon's assets were *undervalued* at market price, the shares were both restricted and subject to forfeiture over a five-year period, and Mr. Cooperman conceded in his testimony that no one would pay even market price for such shares.

***The complaint fails to state an Investment Advisors Act claim.*** Plaintiffs' claims concerning misconduct as to the management agreement and supposed "manipulating downward" of the NAV are also barred by limitations. 28 U.S.C. § 1658(b)(1). The claims concerning the Polygon transaction do not meet the pleading requirements of Rule 9(b), *see DeBlasio* v. *Merrill Lynch*, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) (Sullivan, J.), and furthermore, fail to state a valid claim. Among other things, there are no allegations that the Fund's investment manager failed to disclose any material information to the independent directors who approved the transaction on behalf of the Fund. *E.g., SEC* v. *DiBella*, 587 F.3d 553, 568 (2d Cir. 2009).* The IAA claim is the sole predicate for federal court jurisdiction.

***Forum non conveniens.*** The Royal Court of Guernsey is the most appropriate forum in which to adjudicate claims purportedly on behalf of a Guernsey fund attacking the directors' exercise of fiduciary duties governed by Guernsey law in entering into a related-party transaction. Plaintiffs' decision to litigate here has nothing to do with convenience: the Polygon transaction was approved at committee and board meetings held in Guernsey; the overwhelming majority of the relevant discussions and negotiations occurred in Guernsey or London; the financial and tax advisers to the members of the independent committee were all located in England; most of the key witnesses are to be found in Guernsey or London; and Guernsey has a far greater interest than New York in the resolution of this action involving the internal affairs of a Guernsey fund. *E.g., Gilstrap* v. *Radianz Ltd.*, 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006).

***Certain defendants' motions to dismiss.*** Defendants Dorey and Jeffreys, who are British citizens and residents domiciled in Guernsey, intend to move to dismiss for lack of personal jurisdiction. Defendants Herlyn, Rosenberg and Wishnow intend to move to dismiss under Rule 12(b)(6) for failure to state a claim as to them.

Respectfully submitted,

Herbert M. Wachtell

---

* Defendants also submit that the IAA claim is barred by reason of extraterritoriality under *Morrison* v. *National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), but recognize that Your Honor has indicated an apparently contrary view. *SEC* v. *Amerindo Inv. Advisors*, 2013 WL 1385013, at *9 n.10 (S.D.N.Y. Mar. 11, 2013) (Sullivan, J.).